UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

MARK ARNOLD,

        Plaintiff,

    v.                                                                Case No. 15-cv-876-pp

CITY OF KENOSHA, WISCONSIN,
KENOSHA POLICE OFFICERS
LORN ANSCHUTZ and DUSTY NICHOLS,

        Defendants.

---

**DECISION AND ORDER GRANTING DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT WITH RESPECT TO *MONELL* CLAIMS
AGAINST THE CITY OF KENOSHA (DKT. NO. 19)**

---

Plaintiff Mark Arnold filed a complaint against the City of Kenosha and

three of its police officers, one of whom was dismissed by stipulation. Dkt. No.

14. The plaintiff alleged federal causes of action arising under 42 U.S.C. §1983

for false arrest (Count I), excessive force (Count II), unlawful search and seizure

(Count III), a claim against the City of Kenosha under Monell v. Dep't of Soc.

Servs., 436 U.S. 658 (1978) (Count IV), and state law causes of action for

*respondeat superior* and indemnification (Count V), and assault and battery

(Count VI). Dkt. No. 1.

The City of Kenosha moved for summary judgment as to the plaintiff's

Monell claim against the City.[1]Dkt. No. 19. The plaintiff did not respond to that

motion within the thirty days mandated by Civil Local Rule 56. The court

---

[1] The defendants acknowledge that the plaintiff's claims against the individual
officers will require resolution by a trial. Dkt. No. 20, at 2.

issued an order, warning the plaintiff that if he did not file a response by January 31, 2017, the court would decide the City's motion without the plaintiff's input. Dkt. No. 22. January 31, 2017 has come and gone without any response from the plaintiff.

The court will grant the City of Kenosha's motion, because (1) the record evidence establishes that the plaintiff cannot show that the City of Kenosha could be held liable to the plaintiff under Monell; and (2) the plaintiff abandoned this claim by failing to respond to the City's arguments in support of its motion for summary judgment.

## I.     FACTUAL AND PROCEDURAL BACKGROUND

This case arises out of a domestic dispute involving the plaintiff and his wife, Angela Letona. On July 20, 2012, Ms. Letona, called 911, seeking police assistance because the plaintiff had locked her out of what had been their home in Kenosha, Wisconsin. Dkt. No. 20-2, at 10. The plaintiff testified in his deposition that, about a month or so earlier, his wife had moved out of the home and left behind much of her clothing and personal belongings. Id. at 4. According to Ms. Letona, she and the plaintiff had agreed that Ms. Letona would visit the home on July 20 to attend to her personal affairs. Id. at 5, 9. The plaintiff testified that, after Ms. Letona asked the plaintiff for a key to the home, he became "apprehensive" and began to "fear for [his] safety. Id. at 6. The plaintiff then locked Ms. Letona out of the house and left in his van. Id. After the plaintiff had left, Ms. Letona called the police. Id. at 10.

Kenosha Police Officer Nichols was dispatched to the home; Ms. Letona met Officer Nichols there. Id. at 15-16. She told Officer Nichols that her husband had locked her out of the house and driven away. Id. According to Ms. Letona, she wanted to enter the home to retrieve her possessions. Id. Officer Nichols then contacted Officers Anschutz and Thomas Groth and asked them to look for the plaintiff's van, and if they found the plaintiff, to ask if he would return to the couple's home. Id. at 16.

Officers Anschutz and Groth found the plaintiff, and convinced him to return to his home. Id. at 12-13. After discussing the situation with the officers, the plaintiff agreed to bring his wife's clothing to the front porch; the officers and Ms. Letona remained outside. Id. at 7. According to the plaintiff, after he brought several armloads of his wife's shoes and clothing to the front porch, the officers entered the home and a fight occurred between the plaintiff and the officers. Dkt. No. 1, ¶¶14-42.

The factual allegations in the plaintiff's complaint arise out of the events at his home on July 20, 2012. The plaintiff alleges that the individual defendants entered his home without permission or a warrant, and that they physically assaulted him while in the house with no provocation. Dkt. No. 1 at ¶¶24-38. In their answer, the defendants dispute the plaintiff's account of the events at his home. Dkt. No. 9, ¶¶14-42. During discovery, the parties filed a stipulation dismissing the plaintiff's claims against Officer Groth. Dkt. No. 14. The defendants now have moved for summary judgment as to the plaintiff's Monell claim against the City.

## II.   STANDARD OF REVIEW

A court must grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine issue of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). In evaluating summary judgment motions, courts must view the facts and draw reasonable inferences in the light most favorable to the non-moving party. Scott v. Harris, 550 U.S. 372, 378 (2007). The court may not weigh conflicting evidence or make credibility determinations, Omnicare, Inc. v. UnitedHealth Grp., Inc., 629 F.3d 697, 704 (7th Cir. 2011), and must consider only evidence that can "be presented in a form that would be admissible in evidence," Fed. R. Civ. P. 56(c)(2).

The party seeking summary judgment has the initial burden of showing that there is no genuine dispute and that it is entitled to judgment as a matter of law. Carmichael v. Vill. of Palatine, 605 F.3d 451, 460 (7th Cir. 2010); see also Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). If the moving party meets this burden, the party opposing the motion must then "set forth specific facts showing that there is a genuine issue for trial." Anderson, 477 U.S. at 256. A plaintiff abandons a claim by failing to respond to arguments on that claim in a defendant's motion for summary judgment. Bombard v. Fort Wayne Newspapers, Inc., 92 F.3d 560, 562 n.2 (7th Cir. 1996).

A municipality cannot be held vicariously liable under §1983 based on an individual officer's liability. Monell, 436 U.S. at 691. Instead, a plaintiff may sue a municipality directly under §1983 only if "the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted or promulgated by that body's officers." Id. 436 U.S. at 690. To succeed in recovering against the City, the plaintiff is required to show that he "(1) suffered a deprivation of a federal right; (2) as a result of either an express municipal policy, widespread custom, or deliberate act of a decision-maker with final policy-making authority for the City; which (3) was the proximate cause of his injury." King v. Kramer, 763 F.3d 635, 649 (7th Cir. 2014) (quoting Ienco v. City of Chicago, 286 F.3d 994, 998 (7th Cir. 2002)). Liability under Monell "is not founded on a theory of vicarious liability or *respondeat superior* that holds a municipality responsible for the misdeeds of its employees. Rather, a municipal policy or practice must be the 'direct cause' or 'moving force' behind the constitutional violation." Woodward v. Corr. Med. Servs. Of Ill., Inc., 368 F.3d 917, 927 (7th Cir. 2004) (internal citations omitted). It is only "when execution of a government's policy or custom inflicts the injury that the government as an entity is responsible under § 1983." Id. (internal quotation marks and alteration omitted) (citation omitted).

"The existence of a policy or custom can be established in a number of ways: the plaintiff may point to an express municipal policy responsible for the alleged constitutional injury, or demonstrate that there is a practice that is so

widespread that it rises to the level of a custom that can fairly be attributed to the municipality." King, 763 F.3d at 649 (citing Estate of Sims v. Cnty. of Bureau, 506 F.3d 509, 515 (7th Cir. 2007)).

## III.  DISCUSSION

The plaintiff alleged in his Monell claim that the Kenosha Police Department had a policy and practice of encouraging "the type of misconduct at issue here" by failing to adequately train, supervise and control its officers. Dkt. No. 1 at ¶55(a). He also alleged that the department filed to adequately punish and discipline "instances of similar misconduct." Id. at ¶55(b). He claims that officers abuse citizens "in a manner similar to that alleged by Plaintiff . . . on a frequent basis." Id. at ¶55(c). He asserted that "[m]unicipal policy-makers are aware of, and condone and facilitate by their inaction, a 'code of silence' in the Kenosha Police Department," in which officers fail to report the misconduct of other officers. Id. at ¶55(d). Finally, he claimed that the City of Kenosha failed to remedy these "patterns of abuse," despite knowing of them. Id. at ¶55(e).

Relying on the affidavits of Daniel G. Miskinis (the City's Police Chief) and Robert I. DuMez (one of the defendants' attorneys), the City of Kenosha contends that it "trains its officers in the areas of Civil Rights, Constitutional law, arrest and detention procedures, use of force, and the Kenosha code of ordinances, including the two ordinances with which Mr. Arnold was ultimately charged." Dkt. No. 21, ¶¶ 7-8. The City avers that its Department of Internal Affairs "investigat[es], and, if appropriate, impos[es] remedial disciplinary

sanctions in response to citizen complaints." Dkt. No. 20, at 5; see also, Dkt. No. 21, ¶¶10-11. According to the City, the City has not engaged in a pattern and practice of making false arrests or using excessive force, and there is no "code of silence" under which the City ignores reports of police misconduct. Dkt. No. 21, ¶12.

When the plaintiff failed to respond to the City's motion within the time prescribed in the court's local rules, the court issued an order directing the plaintiff to file his response on or before January 31, 2017. Dkt. No. 22. The court warned the plaintiff that the court would consider the City's motion without the plaintiff's input if he did not respond by that date. Id. As of the date of this order, the plaintiff has not responded to the City's motion. Pursuant to Civil Local Rule 56(b)(5), the court will deem the plaintiff to have admitted the City's proposed statements of material fact for the purposes of deciding this motion.

The City contends that, in the absence of any opposition from the plaintiff, it is undisputed for the purposes of summary judgment that "[the plaintiff] cannot establish an 'express policy' or 'widespread practice' of inadequate training." Dkt. No. 20, at 4. For the same reason, the City argues that there is no record evidence supporting Arnold's allegations that the City engages in a "widespread practice" of abusing citizens, is responsible for a "systematic failure to punish and discipline officers for similar misconduct," or adheres to "code of silence" when officers are alleged to have violated citizens' rights. Id. at 5.

Given the uncontroverted statements of fact and the documentary evidence cited by the City in support of its motion, there is no genuine dispute that that the City does not follow an official custom, policy, or widespread practice of failing to properly train its officers, failing to investigate allegations of officer misconduct and to impose discipline when appropriate, or following a "code of silence" and under which officers are shielded from investigation. Because the plaintiff failed to oppose the City's motion, he failed to show the existence of a genuine dispute on these issues, and his Monell claim cannot proceed.

The court's determination is a narrow one; the court finds only that the plaintiff did not "present definite, competent evidence" to rebut the City's motion, Butts v. Aurora Health Care, Inc., 387 F.3d 921, 924 (7th Cir. 2004), and that by failing to respond to the City's arguments in support of its motion, the plaintiff has abandoned his Monell claim, e.g., Bombard, 92 F.3d at 562 n.2. The court will grant judgment in favor of the City on the plaintiff's Monell claim against the City.

## IV. PROCEDURAL COMMENTS

This case originally was assigned to the late Judge Rudolph T. Randa. On November 17, 2015, Judge Randa set a dispositive motions deadline of November 1, 2016. Dkt. No. 12. He also scheduled a final pretrial conference for April 18, 2017 at 2:00 p.m., and a jury trial for May 1, 2017 at 9:00 a.m. Id.

Now that the court has resolved the one pending dispositive motion, the court will, by separate order, set a telephonic status conference, to discuss with the parties the status of the case, and their efforts toward settlement.

## IV. CONCLUSION

The court **GRANTS** the defendants' motion for summary judgment as to the plaintiff's <u>Monell</u> claim against the City of Kenosha (Count IV). Dkt. No. 19.

Dated in Milwaukee, Wisconsin this 10th day of February, 2017.

BY THE COURT:

HON. PAMELA PEPPER
United States District Judge